UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


WALTER G.B. GORDON,

               Plaintiff,

v.                                                    Case No. 10-10508
                                                      Honorable Julian Abele Cook, Jr.

THE HOME LOAN CENTER, LLC, NEW
CENTURY MORTGAGE CORPORATION,
DEUTSCHE BANK NATIONAL TRUST
COMPANY, MORGAN STANLEY ABS CAPITAL
1 INC., and BARCLAYS CAPITAL REAL
ESTATE, INC. d/b/a HOME EQ. SERVICING

               Defendant.


ORDER

This case involves allegations by the Plaintiff, Walter G.B. Gordon, who contends that the Defendants[1] violated several federal and state (Michigan) statutes in connection with a mortgage that had been executed against his property in Detroit, Michigan.

Currently before the Court is a report from Magistrate Judge R. Steven Whalen who has recommended that the Court (1) grant the Defendants' motion to dismiss with respect to Gordon's federal claims, and (2) remand the state law claims to the Wayne County Circuit Court of Michigan. The Defendants have filed their objections to the latter portion of Magistrate Judge Whalen's report.

---

[1]The allegations of misconduct by Gordon are directed toward the following Defendants: (1) Home Loan Center, LLC ("Home Loan Center"), (2) New Century Mortgage Corporation ("New Century"), (3) Deutsche Bank National Trust Company ("Deutsche Bank"), (4) Morgan Stanley ABS Capital 1 Inc. ("Morgan Stanley"), and (4) Barclays Capital Real Estate, Inc. doing business as Home Eq Servicing ("HomEq Servicing"),

I.    Statement of Facts and Procedural History

On August 26, 2005, Gordon executed a promissory note and mortgage in favor of the Home Loan Center which had been signed by him in conjunction with his acquisition of a home in Detroit, Michigan. These two instruments were subsequently assigned to New Century - purportedly without Gordon's knowledge. However, when New Century became insolvent, the promissory note and the mortgage were ultimately reassigned by its guarantors to Morgan Stanley by Barclays Capital. Barclays Capital entered into a pooling and servicing agreement with Morgan Stanley, which subsequently appointed Deutsche Bank as its Trustee under a pooling and servicing agreement on January 1, 2006.

At some unspecified time, Gordon defaulted on his loan obligations. Gordon alleges that he believed that "he was dealing with [Barclays Capital, doing business as HomEq Servicing] in the execution of a '[f]orbearance [a]greement' without the disclosure by [the] Defendants of any other options to cure the default on his loan." (First Am. Compl. at ¶ 31). Rather than immediately foreclosing on the property, HomEq Servicing entered into a forbearance agreement with him which, in part, readjusted the terms of his payment schedule. Unfortunately, Gordon defaulted on this forbearance agreement as well. On May 14, 2008, HomEq referred the mortgage default to its foreclosure department for legal action. But on September 2, 2008, HomEq agreed to a second forbearance agreement with Gordon who once again failed to satisfy his fiscal obligations thereunder. Thereafter, HomEq Servicing commenced foreclosure proceedings which were concluded on February 11, 2009, with the execution of a sheriff's deed in favor of the highest bidder, the Deutsche Bank. When Gordon did not redeem his property within the statutory six-month redemption period, summary proceedings were initiated by the Deutsche Bank in the 36th Judicial District Court for the State

of Michigan.

Gordon, feeling aggrieved by the events which had caused him to lose his property interests in the Detroit home, commenced this lawsuit in the Wayne County Circuit Court of Michigan on November 2, 2009. Thereafter, the Defendants removed the case to this Court on the basis of its federal question jurisdiction. 28 U.S.C. § 1331.

On April 30, 2010, Gordon filed a first amended complaint. Shortly thereafter, three of the Defendants   (Deutsche Bank, Morgan Stanley,[2] and HomEq Servicing[3]) filed a motion, seeking to obtain a dismissal of the complaint, or in the alternative, the entry of a summary judgment in their favor. After this motion had been fully briefed by both parties but prior to the presentation of their oral arguments, Gordon filed a motion on August 30, 2010, in which he sought leave to file a second amended complaint. Acting upon a preexisting standing order, the Court referred these motions to Magistrate Judge Whalen, who heard oral arguments on both motions on November 9, 2010. However, prior to the rendering of a decision by Magistrate Judge Whalen, the case was reassigned to the undersigned on November 24, 2010 pursuant to Administrative Order 10-AO-033. On February 28, 2011, Magistrate Judge Whalen issued his report which is now before the Court for its consideration. In a separate order, Magistrate Judge Whalen denied Gordon's motion for leave to file a second amended complaint, along with the

_____

[2]These two Defendants maintain that they have been wrongly named as parties because "[n]either Deutsche Bank nor Morgan Stanley have an individual interest in the loan." (Defs.' Br. in Support of Mot. to Dismiss at 7). Both corporations opine, through their representatives, that the proper party defendant should be the "Deutsche Bank National Trust Company as Trustee under Pooling and Servicing Agreement Dated as of January 1, 2006 Morgan Stanley ABS Capital 1 Inc. Trust 2006-NC1 Mortgage Pass-Through Certificates, Series 2006-NC1." *Id.*

[3]For the purposes of this order, the three movants in the instant motion will be identified collectively as the "Defendants."

expressed caveat that this rejection would be subject to the subsequent adoption of his recommendations within the above-referenced report by this Court.

In his first amended complaint, Gordon alleges three counts against the Defendants; namely, (1) a violation of the Real Estate Settlement and Procedures Act, 12 U.S.C. § 2601 *et seq.* ("RESPA"); (2) pendent state law claims for their violations of the Michigan Mortgage Brokers, Lenders, and Servicers Licensing Act, Mich. Comp. Law. § 444.1651 *et seq.*; the Michigan Consumer Protection Act, Mich. Comp. Law. § 445.901 *et seq.*, and the Michigan Consumer Mortgage Protection Act, Mich. Comp. Law. 445.1631, *et seq.*[4]; and (3) violations of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA") and consumer fraud.

Turning to the Defendants' now-pending dispositive motion, Magistrate Judge Whalen concluded that Gordon's TILA and RESPA counts had failed to state a claim upon which relief could be granted.  Thus, it was his recommendation that the Court dismiss these counts with prejudice. He also recommended that, if those claims were dismissed, the Court should remand the remaining claims, all of which were all based on Michigan law, to the appropriate state court. *See* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

In addressing the report from Magistrate Judge Whalen, the Defendants urge the Court to (1) adopt his recommendation to dismiss the federal claims and (2) reject the suggestion that the  state claims be remanded to an appropriate state court. But Gordon, while not registering

---

[4]In his complaint, Gordon made reference to the "Consumer Lending Protection Act of 2002." However, as the Defendants aptly note, there is no such thing as the Consumer Lending Protection Act of 2002. On the other hand, the cited provision, Mich. Comp. Law. § 445.1632, falls within the Consumer Mortgage Protection Act. The Court assumes that it is this statute to which Gordon intended to cite.

any objections to the report as of this date, has expressed his opposition to the Defendants'
stated proposals.

It is the responsibility of the Court to review de novo those parts of the report to which a
specific objection has been made. 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(3). However, the Court
is neither required to review nor precluded from reviewing those portions of the report to which
no objections have been filed. *See Thomas v. Arn*, 470 U.S. 140, 150-51 (1985) ("It does not
appear that Congress intended to require district court review of a [magistrate judge's] factual
or legal conclusions, under a *de novo* or any other standard, when neither party objects to those
findings. . . . [W]hile the statute does not require the judge to review an issue *de novo* if no
objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the
request of a party, under a *de novo* or any other standard.").

## II.        Standards of Review

In their motion to dismiss, the Defendants argue that Gordon's claims neither set forth a
claim upon which relief can be granted nor present any genuine issues of a material fact to be
resolved by the Court. Furthermore, they submit that, because of Gordon's failure to respond to
their requests for admissions in a timely manner, all of their requested matters are deemed to be
admissible evidence which, in turn, are conclusively established for the purpose of this case.
Fed. R. Civ. P. 36(a)(3).

The purpose of the summary judgment rule, as reflected by Federal Rule of Civil
Procedure 56, "is to isolate and dispose of factually unsupportable claims or defenses . . . ."
*Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Therefore, the entry of a summary
judgment is proper "if the movant shows that there is no genuine dispute as to any material fact
and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is

5

'material' for purposes of summary judgment if proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties." *Aqua Grp., LLC v. Fed. Ins. Co.*, 620 F. Supp. 2d 816, 819 (E.D. Mich. 2009) (citing *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)). In order for a dispute to be genuine, it must contain evidence upon which a trier of the facts could find in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 560 (6th Cir. 2004). When assessing a request for a summary judgment, a court "must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party." *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). The entry of a summary judgment is appropriate if the nonmoving party fails to present evidence which is "sufficient to establish the existence of an element essential to its case, and on which it will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

Thus, the moving party bears the initial obligation of identifying those portions of the record that demonstrate the absence of any genuine issue of a material fact. *Celotex*, 477 U.S. at 323. Thereafter, the nonmoving party must "come forward with some probative evidence to support its claim and make it necessary to resolve the differences at trial." *Boyd v. Ford Motor Co.*, 948 F.2d 283, 285 (6th Cir. 1991); *see also Anderson*, 477 U.S. at 256. The presence or the absence of a genuinely disputed material fact must be established by (1) a specific reference to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or (2) a "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

6

The Court notes that the Defendants filed their motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) after having filed an answer, thereby rendering it untimely. *See* 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2004) ("[A] post-answer Rule 12(b)(6) motion is untimely and . . . some other vehicle, such as a motion for judgment on the pleadings . . . must be used"). The Sixth Circuit Court of Appeals has treated a post-answer Rule 12(b)(6) motion as a request for the entry of a judgment on the pleadings under Fed. R. Civ. P. 12(c).[5]  *See, e.g.*, *Satkowiak v. Bay Cnty. Sheriff's Dep't.*, 47 Fed. Appx. 376, 377 n.1 (6th Cir. 2002). Moreover, Fed. R. Civ. P. 12(h)(2) provides that a contention by the defense that an adversary had failed to state a claim upon which relief can be granted "may be raised . . . by a motion under Rule 12(c)."  Therefore, the Court will treat the now-pending motion to dismiss by the Defendants as their joint application for the entry of a  judgment on the pleadings under Fed. R. Civ. P. 12(c).

The standard of review for a motion for a judgment on the pleading for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(c) is the same as that which should be undertaken when evaluating a motion brought under Rule 12(b)(6). *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010). Thus, a district court must accept the plaintiff's well-pleaded allegations as true and construe each of them in a light that is most favorable to it. *Bennett v. MIS Corp.*, 607 F.3d 1076, 1091 (6th Cir. 2010). However, this assumption of truth does not extend to the plaintiff's legal conclusions because "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009). The complaint "must contain either

---

[5]Fed. R. Civ. P. 12(c) states: "After the pleadings are closed - but early enough not to delay trial - a party may move for judgment on the pleadings."

direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008) (citation and internal quotation marks omitted).

In order to survive an adversary's application for dismissal, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this standard, the "plaintiff [must] plead [ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949; *see also Albrecht*, 617 F.3d at 893 (applying these standards to Rule 12(c) motion). In essence, "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Gordon's response to the Defendants' dispositive motion addresses only their arguments which deal with the TILA and RESPA claims. It is important to note that Gordon's failure to respond to their arguments regarding the state law claims does not relieve the Defendants of their initial burdens in moving for a dismissal or a summary judgment. However, to the extent that Gordon has failed to rebut the evidence offered by the Defendants, it will be received and treated as uncontroverted. *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 410 (6th Cir. 1992) ("In the absence of a response, the court must review carefully those portions of the submitted evidence designated by the moving party. Neither the trial nor appellate court, however, will *sua sponte* comb the record from the partisan perspective of an advocate for the non-moving party. Rather, in the reasoned exercise of its judgment the court may rely on the moving party's unrebutted recitation of the evidence, or pertinent portions thereof, in reaching a conclusion that

certain evidence and inferences from evidence demonstrate facts which are 'uncontroverted.'");
*see also Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991) (district court may not grant
summary judgment or dismissal simply because adverse party failed to respond, but rather must
at least ensure that moving party met its initial burden). Therefore, for summary judgment to be
appropriate with respect to Gordon's state law claims, "[t]he moving party must always bear the
initial burden of demonstrating the absence of a genuine issue of material fact, even if the party
fails to respond." *Id.* The analysis is essentially the same with respect to an unrebutted motion
to dismiss, except that the court considers different evidence in each case. *Id.* at 455 ("We see
no reason why the situation should be different in the context of a motion to dismiss for failure
to state a claim under Fed. R. Civ. P. 12(b)(6). In essence, the court's inquiry under either
12(b)(6) or 56(c) is identical, with the most significant difference being the type of evidence the
court considers in reaching its decision.").

      "Documents attached to the pleadings become part of the pleading and may be
considered on a motion to dismiss." *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508
F.3d 327, 335 (6th Cir. 2007) (citing Fed. R. Civ. P. 10(c)). Specifically, "documents that a
defendant attaches to a motion to dismiss are considered part of the pleadings if they are
referred to in the plaintiff's complaint and are central to [the plaintiff's] claim." *Weiner, D.P.M.
v. Klais and Co.*, 108 F.3d 86, 88 n.3 (6th Cir. 1997); *see also Bassett v. NCAA*, 528 F.3d 426,
430 (6th Cir. 2008).

III.    <u>Federal Claims</u>

      After having reviewed the parties' briefs as well as Magistrate Judge Whalen's report,
the Court concludes that Gordon's claims under RESPA and TILA must be dismissed.

Magistrate Judge Whalen correctly determined that Gordon's claims under these federal statutes are barred by the statutes of limitation - and, furthermore, these statutes do not impose liability upon individuals acting in the Defendants' capacities.

Gordon's RESPA claim is brought pursuant to 12 U.S.C. §§ 2607(d)(2) and 2607(d)(5). Such actions must be brought within one year of the alleged violation. *Id.* § 2614. Because he commenced this litigation more than one year after the execution of the second forbearance agreement on September 2, 2008, his claim is barred. Furthermore, the Defendants are not subject to liability under RESPA by virtue of their role as assignees of the note. *United States v. Graham Mortg. Corp.*, 740 F.2d 414 (6th Cir. 1984), *superseded by statute on other grounds*, Housing and Community Development Act of 1992, Pub.L. No.102-550, § 908(a), 106 Stat. 3672 (codified as amended at 12 U.S.C. § 2602(3)). Nor do Gordon's allegations relate to "settlement services" as required for the Defendants' conduct to be within the ambit of RESPA. *See* 12 U.S.C. § 2602(3).

Gordon's TILA claim is also barred by the statute of limitations. Such a claim must be brought within one year of the alleged violation - a time that had elapsed with respect to the mortgage (executed in August 2005) and the second forbearance agreement (executed in September 2008) by the time Gordon commenced this litigation in November 2009. 15 U.S.C. § 1640(e). Likewise, Gordon's claim for a rescission of the mortgage pursuant to 15 U.S.C. § 1635 is also barred by the applicable three-year statute of limitations - and, in any event, his right of rescission expired upon the sale of the property. 15 U.S.C. § 1635(f). Moreover, TILA does not impose new disclosure obligations upon those parties who execute a forbearance agreement where it does not completely replace the original mortgage. *E.g.*, *Norton-Griffiths v.*

10

*Wells Fargo Home Mortg.*, No. 5:10-cv-169, 2011 WL 61609 (D. Vt. Jan. 4, 2011) (citing

*Castrillo v. Am. Home Mortg. Serv., Inc.*, 670 F. Supp. 2d 516, 528 (E.D. La. 2009) ("[W]here a

loan modification agreement does not 'completely replace' an earlier mortgage, but rather

'amends and supplements' it, the document does 'not give rise to disclosure requirements or

rescission rights under TILA.'"); *In re Hart*, 246 B.R. 709, 738 (Bankr. D. Mass. 2000) (citing

Regulation Z, 12 C.F.R. § 226.20(a)). Here, the second forbearance agreement expressly states

that, upon the satisfaction of its terms, payments in accordance with the terms of the original

loan resume. (Pl.'s Resp. to Defs.' Mot. to Dismiss at Ex. 3 ¶ 8). Therefore, the forbearance

agreement does not completely replace the mortgage, and no TILA disclosure obligations were

triggered.

        In his response to the Defendants' motion to dismiss, Gordon also seemingly attempts to

plead a new cause of action for a violation of the Fair Debt Collection Practice Act, 15 U.S.C. §

1692 *et seq.* ("FDCPA"). However, a response to a pending dispositive motion is not the proper

vehicle to assert a new claim. Moreover, Gordon has not proffered a FDCPA claim in his

proposed second amended complaint - a document that was filed more than three weeks after

his response to the motion to dismiss. Therefore, to the extent that Gordon has attempted to

assert a FDCPA claim at this time, the Court will not evaluate the merits of his efforts.

        For the reasons that have been set forth above - and as more fully set forth in Magistrate

Judge Whalen's report - Gordon's TILA and RESPA allegations fail to state a claim upon

which relief can be granted and are, therefore, dismissed with prejudice.

IV.     <u>State Law Claims</u>

        A.      <u>Subject Matter Jurisdiction</u>

11

Magistrate Judge Whalen recommended that the remaining state law claims be remanded to a state court pursuant to 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."). In a separate order, Magistrate Judge Whalen denied Gordon's motion for leave to file a second amended complaint - but conditioned his rejection upon the adoption of the recommendation to remand by the Court. The Defendants disagree with the Magistrate Judge's resolution of the issue, arguing that the Court should exercise its discretion to retain jurisdiction of the state law claims in the interest of judicial economy and to avoid the multiplicity of litigation. Further, they submit that this Court has subject matter jurisdiction by virtue of diversity of the parties. *See* 28 U.S.C. § 1332.

The Defendants argue that complete diversity of citizenship exists in this case because (1) Gordon is a citizen of Michigan; (2) Barclays Capital is a Delaware corporation with its principal place of business in New York; (3) Deutsche Bank is a national banking association and a member of the Federal Reserve with its principal place of business located in New York; and (4) Morgan Stanley is a Delaware corporation with its principal place of business in New York. Gordon counters by arguing that diversity does not exist here because the Defendants voluntarily submitted to the jurisdiction of the State of Michigan by registering to do business therein. He goes even further by contending that the Defendants should be "[e]stopped to deny their identit[ies] as Michigan businesses and diversity is not an available defense to a remand order to state court." (Pl.'s Resp. to Defs.' Objection at 3-4).

Gordon confuses personal jurisdiction with citizenship. A corporation does not become a citizen of a state simply by virtue of consenting to, or having sufficient contacts to support,

the exercise of personal jurisdiction. For the purposes of diversity jurisdiction, "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business," 18 U.S.C. § 1332(c)(1), and "[a]ll national banking associations shall . . . be deemed citizens of the States in which they are respectively located." Therefore, complete diversity exists between the above-named parties.

However, the Court notes that Gordon has added two more Defendants in this action; to wit, the Home Loan Center and New Century. According to the first amended complaint, the Home Loan Center has its principal offices in the State of Michigan, and New Century - before its dissolution - operated in California. Thus, the Home Loan Center destroys complete diversity. The Defendants argue that the citizenship of these entities is irrelevant to diversity jurisdiction because (1) they were never served with process in the state court prior to the removal of this action, and (2) no federal summons was issued for them after removal.

Although the presence of an unserved in-state defendant will not defeat removal under 28 U.S.C. § 1441(b), *see McCall v. Scott*, 239 F.3d 808, 813 n.2 (6th Cir. 2001) ("Where there is complete diversity of citizenship . . . , the inclusion of an unserved resident defendant in the action does not defeat removal under 28 U.S.C. § 1441(b)."), "complete diversity of all named parties, including unserved, unidentified, and subsequently dismissed parties, is essential to establish the Court's diversity jurisdiction over [a] removed action," *Binkley v. APComPower, Inc.*, No. 1:09-CV-203, 2009 WL 3246857 (W.D. Mich. Oct. 5, 2009); *see also Finley v. Higbee Co.*, 1 F. Supp. 2d 701, 703 (N.D. Ohio. 1997). Therefore, diversity jurisdiction will not

13

lie where complete diversity is lacking, even in those situations where the party that destroys diversity has not been served in the action.[6]

However, the Court agrees with the Defendants that efficiency and the multiplication of litigation factors weigh heavily in favor of an exercise of discretion to retain jurisdiction of the state law claims even after dismissal of the federal claims. Where a district court properly has federal question jurisdiction on the date when the petition for removal is filed, the dismissal of the federal claims does not divest it of subject matter jurisdiction. The court may, in its exercise of discretion, resolve the pendent state claims on the merits, dismiss the state claims, or remand the remaining state claims to the state court. *See, e.g.*, *Long v. Bando Mfg. of Am., Inc.*, 201 F.3d 754, 758 (6th Cir. 2000) (quoting *In re Carter*, 618 F.3d 1093, 1101 (5th Cir. 1980)) ("'It is a fundamental principle of law that whether subject matter jurisdiction exists is a question answered by looking to the complaint as it existed at the time the petition for removal was filed. . . . When a subsequent narrowing of the issues excludes all federal claims, whether a pendant [sic] state claim should be remanded to state court is a question of judicial discretion, not of subject matter jurisdiction.'"). In determining whether the retain jurisdiction of the state claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993) (citation omitted).

---

[6]Gordon's proposed second amended complaint does not name the Home Loan Center or New Century as Defendants.Hence, complete diversity would exist among the remaining parties. However, the existence of subject matter jurisdiction is determined at the time when the complaint - or, in removed cases, the notice of removal - is filed. *Harper v. AutoAlliance Int'l, Inc.*, 392 F.3d 195, 210-11 (6th Cir. 2004). Therefore, the second amended complaint, if permitted, could not create diversity jurisdiction where it was lacking at the relevant time.

This litigation was commenced in November 2009, and was removed to this Court in February 2010. Discovery was completed in September 2010. The Court has already resolved motions to compel escrow payments and to compel discovery. In addition, the Court has adopted Magistrate Judge Whalen's recommendation that the federal claims be dismissed. The issues relating to state claims have been extensively briefed by the parties in the same set of briefs that pertained to the now-dismissed federal claims. Thus, the Court is not aware of any reason why the state claims cannot be resolved in this forum. Although Gordon has stated that he prefers a state court adjudication of these claims, he has not presented any argument whatsoever as to why this Court is not a proper forum. Therefore, the  Court concludes that - in the interests of judicial efficiency and avoidance of multiplicity of litigation - its ability to address and resolve the pendent state claims is proper.

B.      Motion for Leave to Amend Complaint

Having determined to resolve Gordon's state law claims, the Court must now consider his motion for leave to file a second amended complaint. The condition upon which Magistrate Judge Whalen's denial of Gordon's motion depended (namely, the remanding of the state law claims by this Court) did not occur. Thus, the Court reinstates Gordon's motion for leave to amend [ECF No. 35] and vacates - only with respect to this specific motion - the order that referred all pretrial matters to Magistrate Judge Whalen [ECF No. 4].

The Federal Rules of Civil Procedure provide that, unless an amendment is filed under circumstances that are not applicable here, a party may amend its pleading only with the consent of the opposing party or the specific authority of the court. Fed. R. Civ. P. 15(a).[7] This

---

[7]It should be noted that Gordon - contrary to the requirements of E.D. Mich. LR 15.1 - failed to attach the proposed amended complaint to his request. However, the Court hastens to

Rule is to be construed liberally, and the court "should freely give leave when justice so

requires." Fed. R. Civ. P. 15(a)(2). The Supreme Court, speaking of the Federal Rules generally

as well as of Rule 15 in particular, has stated that it is "entirely contrary to the spirit of the

Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of [ ]

mere technicalities." *Foman v. Davis*, 371 U.S. 178, 181 (1962); *see also Jet, Inc. v. Sewage

Aeration Sys.*, 165 F.3d 419, 425 (6th Cir. 1999) (citation omitted) ("[T]he thrust of Rule 15 is .

. . that cases should be tried on their merits rather than the technicalities of pleadings."). The

underlying purpose of allowing parties to amend their pleadings is to permit the issues to be

tried on the merits. *Foman*, 371 U.S. at 182 ("If the underlying facts or circumstances relied

upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to

test his claim on the merits.").

The Supreme Court has articulated several factors that are relevant to the propriety of

granting a leave to amend. "In the absence of any apparent or declared reason - such as undue

delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure

deficiencies by amendments previously allowed, undue prejudice to the opposing party by

virtue of allowance of the amendment, futility of amendment, etc. - the leave sought should, as

the rules require, be 'freely given.'" *Foman*, 371 U.S. at 182; *see also Commercial Money Ctr.,

Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 346 (6th Cir. 2007) ("Factors that may affect that

determination include undue delay in filing, lack of notice to the opposing party, bad faith by

the moving party, repeated failure to cure deficiencies by previous amendment, undue prejudice

to the opposing party, and futility of the amendment.").

---

add that this Local Rule also provides that "[f]ailure to comply with this Rule is not [a ground]
for denial of the motion." Gordon did attach the proposed amended complaint to his reply brief.

16

The Court concludes that these factors are sufficient to outweigh the presumption in favor of amendment. This litigation was commenced in November 2009, and Gordon filed a first amended complaint in April 2010. He filed the pending request to amend four months later, in August 2010. Although delay alone would not be a sufficient basis upon which to reject an application for leave to amend, "delay will at some point become 'undue,' 'placing an unwarranted burden on the court,' or 'prejudicial,' 'placing an unfair burden on the opposing party.'" *Commerical Money Ctr.*, 508 F.3d at 347 (quoting *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002)).

Gordon did not provide this Court any reason why he did not or could not include the proposed additional claim in either of his first two complaints.  Moreover, the proposed amended complaint does not appear to advance any facts that first became known to Gordon after those complaints were filed. Moreover, the Defendants have filed answers to both complaints and have engaged in extensive motion practice with respect to the pending dispositive motion. The Court also agrees that the Defendants have been - and will continue to be - prejudiced by the long duration of this litigation, a burden that will only increase if Gordon is permitted to return to square one. Gordon does not dispute the Defendants' claim that he has been living in his home on a rent and mortgage free basis since November 2008. Although the Court will not rest its decision on this consideration, it does appear that Gordon is attempting to further delay a resolution of these issues so as to prevent Deutsche Bank - the successful bidder at the public sale - from taking possession of the residence.

Finally, the Court notes that the Defendants have convincingly argued that the proposed amendment would be futile. Citing Mich. Comp. Law. § 440.3205, Gordon proposes to add a

17

cause of action pursuant to the Michigan Uniform Commercial Code, alleging that the Defendants lacked authority to foreclose because they were not holders in due course of the note. However, Section 3205 - part of Michigan's Uniform Commercial Code - addresses negotiable instruments, and is inapplicable to a mortgage that is not a negotiable instrument. *See, e.g.*, *Jaboro v. Wells Fargo Bank, N.A.*, No. 10-11686, 2010 WL 5296939, at *6 (E.D. Mich. Dec. 20, 2010); *Hilmon v. Mortg. Elec. Registration Sys., Inc.*, No. 06-13055, 2007 WL 1218718, at *3 ("[N]othing in [Michigan's foreclosure by advertisement statute] requires a named mortgagee to be a holder in due course of the note."). Thus, Gordon's proposed claim pursuant to § 440.3205 could not prevail, even if he were permitted to file it.

For all of these reasons, the Court denies Gordon's motion for leave to file a second amended complaint, and will thus turn to its consideration of the remaining state law claims in his first amended complaint.

## C.   Dismissal of Gordon's State Law Claims

Gordon alleges that the Defendants violated the provisions of the Mortgage Brokers, Lenders, and Servicers Licensing Act, Mich. Comp. Law. § 444.1651 *et seq.*,  ("MBLSLA"); the Michigan Consumer Protection Act, Mich. Comp. Law § 445.901 *et seq.* ("MCPA"); and the Consumer Mortgage Protection Act, Mich. Comp. Law 445.1631, *et seq.* ("CMPA"). The Defendants proclaim that all of these claims fail to state a claim upon which relief can be granted. As noted earlier, Gordon did not respond to this portion of the Defendants' dispositive motion.

Gordon alleges that the Defendants violated the MCPA (without reference to any particular provision or section within this statute) and the MBLSLA, Mich. Comp. Law §§ 445.1672 and 445.1673, by:

> (a)  Failing to conduct their business in accordance with the Act and other laws, § 445.1672(a)[8];
>
> (b) Engaging in fraud, deceit, and/or material misrepresentations in connection with this transaction, § 445.1672(b);
>
> (c)  Committing actionable fraud in forcing Gordon to enter into a series of forbearance agreements for the purpose of depriving him of due process rights afforded to him under the Michigan and United States Constitutions;
>
> (d)  Failing or refusing to disclose the required terms and conditions of the forbearance agreements;
>
> (e)  Intentionally or due to gross or wanton negligence continuously and repeatedly failing to provide him with material disclosures or information required by law, § 455.1672(c);
>
> (f)  Charging him fees beyond those that were reasonable, necessary, and actually incurred by the Defendants in connection with these transactions, § 455.1673(1); and
>
> (g)  Inducing him to enter into a transaction or series of transactions that provided little or no benefit to him but were arranged for the primary and/or sole purpose of generating excessive fees for the Defendants.

(First Am. Compl. ¶ 59).

1. <u>Mortgage Brokers, Lenders, and Servicers Licensing Act</u>

To the extent that these allegations are based on the MBLSLA, they must be dismissed because of Gordon's  failure to state a claim upon which relief can be granted. First, those claims that allege fraud or material misrepresentation - allegations (b) and (c) above - plainly fail to meet the federal and Michigan requirements that allegations of fraud be pled with

---

[8]Gordon has not provided the statutory citations for these allegations. However, where the Court was able to ascertain a statutory basis for his claims, the relevant citations have been included.

2:10-cv-10508-JAC-RSW   Doc # 46   Filed 03/31/11   Pg 20 of 27   Pg ID 725

particularity. *See* Fed. R. Civ. P. 9(b); MCR 2.112(B)(1). This Rule has been interpreted to require a plaintiff who alleges fraud to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Frank v. Dana Corp.*, 547 F.3d 564, 569-70 (6th Cir. 2008) (citation omitted). Moreover, "[a]t a minimum, [p]laintiffs must allege the time, place and contents of the misrepresentations upon which they relied." *Id.* at 570 (citing *Bender v. Southland Corp.*, 749 F.3d 1205, 1216 (6th Cir. 1984)). As explained in detail by the Defendants, Gordon has satisfied none of these requirements.

Second, those claims that are premised on conduct associated with the mortgage agreement - as opposed to the forbearance agreement - must fail as against these Defendants, none of whom had any involvement in the origination of the mortgage. Nor can these Defendants be held liable for the conduct of the Home Loan Center or New Century. Therefore, for the purposes of the pending dispositive motion, only the conduct of these three Defendants with respect to the forbearance agreement is relevant. Thus, because Gordon's claim that the Defendants charged unreasonable fees - allegation (f) above - is unsupported by any factual allegations that relate to the forbearance agreement as opposed to the original mortgage, this claim must fail.

Third, the claim that the Defendants did not disclose the terms and conditions of the forbearance agreement - allegation (d) above - must fail because, as the Defendants note, the terms and conditions were expressly described in the forbearance agreement itself. (*See* Defs.' Mot. to Dimiss at Ex. 11, p. 1 ("Attached is the Forbearance Agreement (the "Agreement") outlining the terms and conditions of the repayment schedule for the above-reference account . .

20

. .").[9] Similarly, Gordon has provided no indication of what other disclosures, if any, were required by law with respect to the forbearance agreement - and thus his claim of continuous and repeated failure to provide disclosures - allegation (e) above - must also fail.[10]

Fourth, Gordon's claim that the Defendants induced him to enter into transactions that were designed to generate excessive fees for themselves rather than to benefit him - allegation (g) above - likewise fails to state a claim. Gordon has provided no statutory or case law basis that would establish that the alleged conduct gives rise to an actionable claim. If the gravamen of the charge is that the Defendants failed to disclose the nature and effects of the forbearance agreement, this argument fails for the same reason that allegations (d) and (e) fail - he was provided, and he signed, the forbearance agreement on which all the terms and conditions are listed. If this charge is essentially an allegation of fraud in the inducement, it fails for the same reasons as allegations (b) and (c).

Finally, having determined that allegations (b) - (f) fail as a matter of law, the Court can comprehend no basis for Gordon's claim that the Defendants failed "to conduct their business in accordance with the Act and other laws" - allegation (a) above. This claim - like the rest of Gordon's claims under the MBLSLA - must be dismissed for failure to state a claim.

---

[9]This Exhibit is not a matter that is outside the pleadings, *see* Fed. R. Civ. P. 12(d), because it is "referred to in the plaintiff's complaint and [is] central to [the plaintiff's] claim," *Weiner, D.P.M.*, 108 F.3d at 88 n.3. Therefore, consideration under the 12(b)(6) rather than summary judgment standard is appropriate.

[10]The Court acknowledges - but, given its resolution of the contested issues, finds it unnecessary to pass upon - the Defendants' alternative argument that Gordon's fraud and disclosure claims also fail because, by virtue of his failure to respond to their requests for admission, Gordon has admitted to receiving and understanding all required disclosures and material terms and conditions with respect to the original mortgage and the forbearance agreement. (*See* Defs.' Mot. to Dismiss at 7-9).

2.    <u>Michigan Consumer Protection Act</u>

Gordon's claim under the MCPA must be dismissed for two independent and individually sufficient reasons. First, he fails to identify what actions by which Defendant(s) violated which provision(s) of the MCPA. The Court has examined the relevant statutory language, and cannot determine which, if any, provisions are implicated by the conduct that Gordon attributes to the Defendants. It is possible - though a stretch - that Gordon intended to allege a violation of § 445.903(1)(s) ("Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer."). However, Gordon has not advanced (1) the facts that were allegedly withheld, (2) which Defendant was obliged to but failed to reveal those facts, (3) whether and why those facts were material, (4) whether the withholding of those facts would tend to mislead or deceive, and (5) why he could not reasonably have known those facts. Inasmuch as Gordon has failed to provide any factual support for a violation of this provision, and because the Court cannot ascertain any other basis for a violation of the MCPA, this claim must be dismissed for failure to state a claim upon which relief can be granted.

Second, the MCPA explicitly exempts "transaction[s] or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States." Mich. Comp. Law. § 445.904(1)(a). When analyzing a claim of exemption, "the relevant inquiry is not whether the specific misconduct alleged by the plaintiffs is 'specifically authorized.' Rather, it is whether the general transaction is specifically authorized by law, regardless of whether the specific misconduct alleged is prohibited." *Smith v. Global Life Ins. Co.*, 597 N.W.2d 28, 38 (Mich. 1999). Thus, to prove an entitlement to this

22

exemption, a defendant must show that it was specifically authorized to engage in the type of general transaction that is the gravamen of the complaint.

First, federal and state courts that apply Michigan law have repeatedly held that mortgage loan transactions are a type of "general transaction" that is exempt from the MCPA. *E.g.*, *Chungag v. Wells Fargo Bank, N.A.*, No. 10-14648, 2011 WL 672229, at *4 (E.D. Mich. Feb. 17, 2011) (listing cases) ("Following *Smith*, both Michigan courts and federal courts applying Michigan law have consistently held that the MCPA does not apply to claims arising out of residential mortgage loan transactions."); *Robbins v. Mortg. Elec. Registration Sys., Inc.*, No. 1:09-CV-295, 2009 WL 3757443, at *7 (W.D. Mich. Nov. 9, 2009) ("However, the MCPA does not apply to claims arising out of residential mortgage loan transactions, because such transactions are generally exempt from the MCPA."); *Strickfaden v. Park Place Mortg. Corp.*, No. 07-15347, 2008 WL 3540079, at *5 (E.D. Mich. Aug.12, 2008) (citing *Mills v. Equicredit Corp.*, 294 F. Supp. 2d 903, 910 (E.D. Mich. 2003), for the proposition that "mortgage loan transactions are generally authorized under the law and are therefore exempt from the Michigan Consumer Protection Act"); *Newton v. West*, 868 N.W.2d 491, 493 (Mich. App. 2004) ("Residential mortgage loan transactions fit squarely within [the § 445.904(1)(a)] exemption.").

Second, the Defendants have, under various state and federal provisions, been "specifically authorized" to engage in these transactions. Courts have consistently held that defendants who are licensed under the MLBSLA fall within this exemption. *Morris v. HomEq Servicing, Corp.*, No. 288631, 2010 WL 537745, at *5 (Mich. App. Feb. 16, 2010) (unpublished) ("[B]ecause defendant is a mortgage loan servicer that is specifically authorized under the [MBLSLA] to engage in mortgage loan transactions, subject to the supervisory

23

authority and control of the Commissioner of the Office of Financial and Insurance Services,

MCL 445.1651 a(b); MCL 445.1661(1), we find that defendant is exempt from the provisions

of the MCPA."); *Ursery v. Option One Mortg. Corp.*, No. 271560, 2007 WL 2192657, at *15

(Mich. App. July 31, 2007) (unpublished) (mortgage lender exempt from MCPA claim because

"the MBLSLA, through the licensing requirement, specifically authorizes qualified persons to

engage in mortgage lending or mortgage servicing."). The Defendants have provided - and

Gordon has not rebutted - evidence that HomEq is licensed as a First Mortgage Registrant under

the MBLSLA and as a Second Mortgage Registrant under the Secondary Mortgage Loan Act,

Mich. Comp. L. § 493.51 *et seq.* (*See* Defs.' Mot. to Dismiss at 22 and Ex. 20).[11] Therefore,

HomEq is exempt from the MCPA.

Likewise, commercial banks that are regulated by the Federal Reserve Board are exempt

from the MCPA. *See Brown v. Bank of New York Mellon*, No. 1:10-CV-550, 2011 WL 206124,

at *7 (W.D. Mich. Jan. 21, 2011) (bank that was member of  Federal Reserve and regulated by

Federal Reserve Board was exempt from MCPA for conduct in originating and servicing

mortgage loans); *Nuckols v. Fed. Reserve Bank of Chi.*, No. 07-11744, 2008 WL 251892 (E.D.

Mich. Jan. 30, 2008) ("Congress has given the Board of Governors of the Federal Reserve

System authority to promulgate and enforce regulations to define and prevent unfair or

---

[11]The consideration of this evidence by the Court does not require an analysis under the summary judgment standard rather than the 12(b)(6) dismissal standard because "documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim." *Weiner, D.P.M.*, 108 F.3d at 88 n.3. Gordon's first amended complaint alleges that Barclays Capital is licensed in Michigan and that the remaining Defendants should be licensed or registered under the MBLSLA. (*See* First Am. Compl. at ¶¶ 57-58). However, out of an abundance of caution, the Court notes that, because Gordon has not rebutted this evidence, there exists no genuine issue of a material fact with respect to the Defendants' licensing status.

deceptive acts or practices by banks. 15 U.S.C. § 57a(f). . . . The Court concludes that this regulation of the banking industry by Congress is sufficient to come within the exception set forth in MCLA § 445.904(a)."). Here, too, the Defendants have provided - and Gordon has not rebutted - evidence that the Deutsche Bank is a member of the Federal Reserve and is regulated by the Federal Reserve Board.[12]

The exemption from the ambit of the MCPA for the Defendants' conduct here at issue is an additional reason that Gordon's MCPA claim must be dismissed for failure to state a claim upon which relief can be granted.

3.     Consumer Mortgage Protection Act

Gordon's claim under the CMPA must be dismissed because this Act provides no private cause of action. On the contrary, the CMPA "expressly provides for an enforcement action by the commissioner, § 445.1639, or by the attorney general or county prosecuting attorney, § 445.1640. Nowhere in the CMPA is there a provision for a private cause of action." *Chowdhury v. Aegis Mortg. Corp.*, No. 2:09-cv-11221, 2009 WL 3270090, at *5 (E.D. Mich. Oct. 9, 2009); *see also Strickfaden v. Park Place Mortg. Corp.*, No. 07-15347, 2008 WL 3540079, at *3 (E.D. Mich. Aug.12, 2008) (sanctioning plaintiff's attorney under Fed. R. Civ. P. 11(b) because, in addition to other baseless claims, she asserted CMPA claim despite the fact that it does not provide for private right of action). Therefore, Gordon's claim pursuant to the

---

[12]Gordon has not made any representation that the third Defendant (Morgan Stanley) that is a party to this motion committed any of the acts about which he complains or is somehow liable under this or any other count by virtue of having appointed Deutsche Bank to serve as trustee. Therefore, to the extent that Gordon intended or attempted to allege these counts against Morgan Stanley, those counts are dismissed because of his failure to state a claim.

CMPA must be, and is, dismissed with prejudice for failure to state a claim upon which relief can be granted.

V.    Conclusion

For the reasons that have been set forth above, the Court (1) adopts Magistrate Judge Whalen's report in part, and dismisses Gordon's federal claims as against these three Defendants; (2) rejects the recommendation within the report to remand the state law claims; (3) reinstates Gordon's motion for leave to amend [ECF No. 34]; (4) vacates the order of reference - solely with respect to Gordon's motion for leave to amend - to Magistrate Judge Whalen [ECF No. 4]; (5) denies Gordon's motion for leave to amend; (6) dismisses Gordon's state law claims as against these three Defendants for failure to state a claim upon which relief can be granted.[13]

IT IS SO ORDERED.

Dated: March 31, 2011                           s/Julian Abele Cook, Jr.

        Detroit, Michigan                        JULIAN ABELE COOK, JR.
                                                 United States District Court Judge

---

[13]The Court acknowledges Gordon's assertion that he has found "some discrepancies" between the loan documents that the Defendants have submitted as exhibits and those same documents in his possession. (See Pl.'s Resp. to Defs.' Mot. to Dismiss at 2). However, Gordon has failed to allege with any specificity what these discrepancies are or whether they are material to the claims and defenses asserted here. These vague allegations cannot create a genuine issue of material fact. Moreover, the only such document that the Court has considered - the forbearance agreement - was also attached as an exhibit to Gordon's response to the pending dispositive motion. Upon comparison, the Court found no discrepancies relevant to the claims at issue. Finally, the Court is inclined to view this assertion as another example of Gordon's apparent "moving target" approach to litigation, wherein he successively lodges new allegations and claims, without appropriate factual, statutory, or case law support, in nothing more than a seeming effort to further delay resolution of his claims.

26

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on March 31, 2011.

s/ Kay Doaks

Case Manager